**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

      Plaintiff,

vs.                                                                  No. CR 04-1467 JB

JING QIAN JIANG,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on Defendant Jing Qian Jiang's Objections to Pre-Sentence Report, filed March 23, 2005 (Doc. 145) .[1]  A sentencing hearing was held in this matter on March 28, 2005.  The primary issue is whether the Court should accept the stipulated sentence in the Plea Agreement and deviate from the United States Sentencing Guidelines (the "Guidelines").  Because the Court concludes that time served and forfeiture of $8,261.00 is a reasonable sentence and that, although it varies from the Guidelines, the sentence will more effectively promote the sentencing goals outlined in 18 U.S.C. § 3553(a), the Court will accept the Plea Agreement and sentence Jiang accordingly.

**BACKGROUND**

---

[1] Probation resolved most of Jiang's objections before the hearing, so that, at the hearing, there were only objections for the Court to resolve.  See Transcript of Hearing at 3:5-12 (hereinafter "Transcript").  The Court sustained objection No. 4 and found that Jiang is not a shareholder in Grand China, Inc. and only worked there.  See id. at 4:23-24.

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version.  Any finalized transcript may contain slightly different page and/or line numbers.

Jiang was born in Fujian, China.  <u>See</u> Pre-Sentence Investigation Report ¶ 60, at 14 (disclosed March 22, 2005)(heirenafter "PSR").  Jiang came to the United States in 1997.  <u>See</u> <u>id.</u> ¶ 63, at 15. He settled in Albuquerque, New Mexico in 2001.  <u>See</u> <u>id.</u>  Jiang never obtained legal authorization to remain in the United States.  <u>See</u> <u>id.</u>  Jiang is married to co-defendant Ming Yue Chen, a lawful permanent resident.  <u>See</u> <u>id.</u> ¶ 64, at 15.  He has two daughters who were born in the United States and are legal citizens.  <u>See</u> <u>id.</u>

On March 10, 2005, Jiang entered into a plea agreement with the United States:

> The defendant agree[d] to plead Guilty to Counts 1 through 11 of Indictment No. 04-1467 JB, charging violations of 26 U.S.C. § 7206(1) and 8 U.S.C. §§ 1324(a)(1)(A)(v)(I), 1324(a)(1)(B)(i), 1324(a)(1)(iv), 1324(a)(1)(v)(II), 1324(a)(1)(A)(iii), 1324(a)(1)(A)(v)(II), and 2, that being Making and Subscribing a False Tax Return, Aiding and Abetting, Conspiracy, Inducement and Harboring.

Plea  Agreement ¶ 3, at 2, filed March 10, 2005 (Doc. 133).   The PSR assigns Jiang a total offense level of 14 and a criminal history category of I.  <u>See</u> PSR ¶¶  56, 59, at 13, 14.  Under the Guidelines, Jiang's sentence range is 15 to 21 months, <u>see</u> <u>id.</u> ¶ 75, at 17, and the corresponding fine range is $5,000 to $50,000, <u>see</u> <u>id.</u> ¶ 76, at 17. The plea agreement, however, provides:

a.       Pursuant to Rule 11(c)(1)(C), Fed. R. Crim. P.: 1) the time defendant has already served is the appropriate disposition of this case; and 2) in consideration of the $550,000 to be forfeited, no fine is imposed.

b.      The defendant is jointly and severally liable with this co-defendants in the instant case and in Superceding Indictment CR No. 04-1468 JB for $550,000.00. This amount is to be forfeited to the Department of Homeland Security ICE Asset Forfeiture.  The total to be paid by the time of sentencing of Defendant's co-Defendant's in the instant case and in Superceding Indictment CR No. 04-1468 JB. This amount is to be paid in the form of cashier's checks made payable to the Department of Homeland Security ICE and delivered to ICE-SA Kelley Wigley.  The amount of $550,000.00 includes the $8,261.00 seized from the defendant on April 6, 2004.

c.      The defendant stipulates that all offenses to which he is entering his guilty plea

are aggravated felonies within the meaning of 8 U.S.C. § 1101(a)(43).  Therefore, the defendant stipulates that he is a deportable alien.

Plea Agreement ¶ 5, at 3.

At the sentencing hearing, the Court raised concerns about the proposed sentence that departed or deviated from a Guideline sentence and the lack of financial information for Jiang.  See Transcript at 8:5-25.  The United States and Jiang explained that Jiang's sentence is part of a global plea agreement involving multiple defendants in this and two related cases.  See id. at 9:3-10, id. at 15:3-21.  They also represented to the Court that Jiang did not have considerable visible assets and was forfeiting $8,261 as part of the plea agreement.  See id. 13:19 - 14:14, id. at 27:18-19.

## LAW ON SENTENCING

In United States v. Booker, 543 U.S. ___, 125 S. Ct. 738 (2005), the Supreme Court of the United States excised 18 U.S.C. § 3553(b), the provision of the Sentencing Reform Act that made the Guidelines mandatory.   See United States v. Booker, 125 S.Ct. at 756-57 (Breyer, J.).  The Supreme Court indicated that the Guidelines are "advisory."  Id.  Judges must consider the Guidelines sentencing range, but must also consider the other factors set forth in 18 U.S.C. § 3553(a).  See id.

Section 3553(a) sets out factors a court is to consider in imposing a sentence.  Section 3553(a) directs courts to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)."  18 U.S.C. § 3553(a).  Paragraph (2) indicates those purposes are:

[T]he need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).  Section 3553(a) further directs courts to consider: (i) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (ii) "the kinds of sentences available," 18 U.S.C. § 3553(a)(3); (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6); and (iv) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7).

## PLEA AGREEMENTS AND DOWNWARD DEPARTURES

Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure allows an attorney for the government to "agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply."  Such an agreement "binds the court once the court accepts the plea agreement."  Fed. R. Crim. P. 11(c)(1)(C).  Section 5K2.0(d)(4) of the Guidelines indicates that "a departure may be based on justifiable, non-prohibited reasons as part of a sentence that is recommended, or agreed to, in the plea agreement and accepted by the court." U.S.S.G § 5K2.0(d)(4).  See also U.S.S.G. § 6B1.2(c)("[T]he court may accept the agreement if the court is satisfied . . . the agreed sentence departs from the applicable guideline range for justifiable reasons.").

## ANALYSIS

It is unclear whether the United States or Jiang attempt to justify this plea agreement as a

downward departure.  It appears that they are requesting deviation or variation under <u>Booker</u> rather than a departure under the Guidelines.  <u>See</u> Transcript at 7:11-8:4, 29:14-20.  Because, however, the Court must first determine the correct Guideline sentence before it decides whether it is appropriate, the Court will first decide whether a departure under the Guidelines would be appropriate.

## I.  <u>THE GUIDELINES PROHIBIT A DOWNWARD DEPARTURE.</u>

Paragraph 93 of the PSR states: "After assessing the defendant's criminal and social behavior and details of the instant offense, it is determined that there are no circumstances that take his case away from the heartland of cases of similarly situated defendants." PSR ¶ 93, at 19-20.  Neither party objected to the statements in this paragraph.  Again, the parties concentrated on asking for a deviation or variation from the Guidelines, rather than a departure.  <u>See</u> Transcript at 7:11 - 8:4, <u>id.</u> at  29:14-20.

Because the parties and Probation do not point to any grounds under §5K of the Guidelines as the basis for a departure, the Court is concerned whether the Guidelines authorize a departure under the facts and circumstances of the case.  The Court is struggling to see how Jiang's facts and circumstances differ from the many other cases that the Court sees in this border district.  In any case, even if a departure is authorized, the Court chooses not to depart because it does not believe departure is warranted under the facts and circumstances here.  Unfortunately, our docket contains many defendants who come into the United States illegally and commit crimes when they arrive.  The Court has trouble distinguishing Jiang's case from many others.  The Court agrees with Probation that Jiang's case fits into the heartland of cases.  Thus, even if departure were authorized under the case's facts, the court would exercise its discretion not to depart because this case remains within the

heartland of cases that federal courts see.

The Court concludes that the case's facts and circumstances do not warrant a departure.  No circumstances suggest to the Court that this case falls outside the heartland of cases of similarly situated defendants. To the extent that the objections contain a request for a  downward departure, the Court will deny a downward departure.

## II.    A DEVIATION OR VARIATION FROM THE GUIDELINES IS WARRANTED.

The United States and Jiang ask the Court to deviate from the Guidelines.  While a district court should be hesitant to deviate or vary from the Guidelines where the Guidelines would not permit a departure, the Court concludes that a downward departure is not warranted in this case, but that nonetheless the punishment set forth in the plea agreement is appropriate for this offense.  The Court is familiar with Jiang's history and characteristics as a result of the detention hearings.  Jiang has no adult or juvenile convictions, and he has already been detained for eight months in an urban jail.  Jiang's history and characteristics do not demand any more than the eight months of imprisonment he has already endured.  If the Court were to sentence Jiang to 15 months, with time served, the gap between a Guideline sentence and the plea agreement sentence would not be great. Given the good time for which Jiang would be eligible,[2] a sentence within the Guidelines and the stipulated sentence here would not be significantly different. Considering the nature and circumstances of the offense and the defendant, and the kinds of sentences available, the Court concludes that the stipulated sentence of time served is appropriate.

The Court was concerned about not imposing a fine, because Jiang has assets.  At the

---

[2] A person receiving less than one year does not recover good time credit.  See 18 U.S.C. § 3624(b)(1).

sentencing, the Court questioned about Jiang's financial situation.  See Transcript at 8:6-25.   The United States and Jiang represent that Jiang does not have considerable visible assets, and that he is forfeiting a significant amount as part of the joint plea agreement.  See id. at 26:23-24.   Jiang did not have a shareholder interest in Grand China, and was not an officer or owner. See id. at 22:21-22. Jiang has no ownership interest in any business.  See id.  His assets came from income as a kitchen worker in a Chinese restaurant. See id. at 22:14-16.  There is no evidence that Jiang owns any stocks or bonds.  See id. at 23:16-17.  His wife owns a small minority share in the restaurant.  See id. at 25:5-6.

In 2002, Jiang and his wife bought a home in which they have a small amount -- $36,000 -- of equity.  See id. at 27:20-22.  They have mostly been paying interest so far.  See id. at 26:4-5.  They have a mortgage balance of $90,000, which is payable over the next 13 years.   See id. at 26:2-5. Jiang and his wife have two vehicles.  See id. at 26:7-8.  They have loans on both vehicles, for which they pay approximately $300.00 to $500.00 a month for each vehicle.  See id. at 26:8-9.  Jiang does not hold assets on anyone's behalf or in trust for anyone.  See id. at 26:12-13.  Jiang has some credit card debt.  See id. at 26:10.  They also have some life insurance.  See id. at 26:15.  These are small life policies on Jiang and his family.  See id. at 26:17-18.

Jiang's crime is largely a crime against the United States, rather than against any particular victim.  The United States will be compensated for any financial losses from the tax underreporting. There is no need for restitution.  Jiang and his spouse are forfeiting considerable assets pursuant to the plea agreement. The United States seized $8,261 at Jiang's house at the time of the search.  Jiang has agreed to give up his claim to this money.  The United States will recover $550,000 from various sources, some of which the United States already has taken or frozen, and some of it earned in the

future by co-defendants. The businesses are still operating and all defendants are jointly and severally liable for the $550,000. See Plea Agreement ¶ 5(b), at 3. This particular plea agreement will hurt the organization financially and the United States gets the benefit of the assets it has seized without any defendant contesting the seizure and forfeiture.

Moreover, there are immediate consequences. Jiang has pled to an aggravated felony and will most likely be deported from the country. The Court can consider this deportation as a factor in imposing the stipulated sentence. The Court concludes the stipulated sentence adequately addresses the needs of the public and the victims of the offense.

Because of the way the United States put this financial and incarceration plea agreement package with all the defendants, the Court is satisfied that Jiang's sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and protects the public.[3] The Court concludes that the stipulated sentence is a reasonable sentence and that, although it varies from the Guidelines, it will more effectively promote the sentencing goals outlined in 18 U.S.C. § 3553(a) than a Guideline sentence.

There is a special societal interest in upholding this plea. If the Court rejects the plea agreement, and Jiang withdraws his guilty plea, there may be two jury trials of about three weeks each. The United States and the Court have an interest in avoiding that lengthy litigation. The United States looked at the costs of litigation, how much money was involved, how much the defendants were forfeiting, and what would be gained by more incarceration and a fine. The United

---

[3] The need to provide education or vocational training, medical care, or other correctional treatment is not a major factor here. To the extent that they point in any direction, they suggest that the United States taxpayer should not continue to pay for any services to Jiang given his likely deportation after release.

States' determination of a reasonable sentence in a multi-defendant case is entitled to consideration.

The Court also needs to avoid sentencing disparities.  The United States made a plea agreement with

the other defendants, including co-defendant Linda Ali.  The Court has already sentenced Ali to time

served.  Jiang's co-defendant wife is out of custody.  Jiang is the only defendant in custody.  The

United States created its plea policy with regard to the Defendants' relative culpability.  The

allocation of responsibility  by the United States in a plea agreement is a factor the Court may

consider in deciding whether to vary from the Guidelines.

> **IT IS ORDERED** that the Plea Agreement is accepted.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

David C. Iglesias
   United States Attorney for the
   District of New Mexico
Tara Neda
   Assistant United States Attorney
James Tierney
   Assistant United States Attorney
Albuquerque, New Mexico

> *Attorneys for the Plaintiff*

Tova Indritz
Albuquerque, New Mexico

> *Attorney for Defendant Jing Qian Jiang*

-9-